## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JORGE CABEZA** | * | |
| **ROSA VIRGINIA CABEZA** | * | |
| 11834 White Pine Drive | * | |
| Hagerstown, MD  21740 | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Case No.:       13-3511 |
| | * | |
| **RICHEY LAW & ASSOCIATES  d/b/a** | * | |
| **RICHEY REAL ESTATE LAW FIRM** | * | |
| 8901 Irvine Center Drive, Suite 900 | * | |
| Irvine, CA  92618 | * | |
| | * | |
| And | * | |
| | ● | **DEMAND FOR JURY TRIAL** |
| **MIA RICHEY A/K/A MICHELE** | * | |
| **SUSAN RHEINTGEN** | * | |
| 4094 Peninsula Drive | * | |
| Carlsbad, CA  92010 | * | |
| | * | |
| Defendants | * | |

********************************************************************************

## COMPLAINT

Plaintiffs Jorge Cabeza and Rosa Virginia Cabeza ("Mr. & Mrs. Cabeza or "the Cabezas"), through their undersigned counsel file this Complaint and Request for Jury Demand against Defendants Mia Richey a/k/a Michelle Susan Rheintgen ("Richey") and Richey Law & Associates d/b/a Richey Real Estate Law Firm ("Richey Law Firm") (collectively "Defendants") say in support:

1. The underlying matter involves predatory practices of Richey and Richey Law Firm, unlicensed credit service businesses and foreclosure consultants, providing bogus and illegal services to the Plaintiffs in the State of Maryland.

2. As a result of the bogus and illegal services of the Richey Law Firm, the Cabezas have been damaged in the following manner:

    a. Richey and Richey Law Firm's delays, misrepresentations, and illegal services described herein have further exasperated the Cabezas' opportunity to modify their mortgage loan to a long-term modification to retain their home and property and potentially made it difficult for them to ever modify their loan to a sustainable solution.  Had Richey and Richey Law Firm provided bona fide and legitimate services to the Cabezas, the Cabezas were more likely to have achieved a sustainable modification of their mortgage loan without the real threat of foreclosure than they presently were given the wasted time and services caused by Richey and Richey Law Firm.

    b. The Cabezas' credit has been further damaged as a result of the bogus and illegal services performed by Richey and Richey Law Firm.  Instead of aiding the Cabezas, Richey and Richey Law Firm have in fact further harmed the Cabezas since Richey and Richey Law Firm did not perform legal or legitimate services.

    c. The Cabezas' have sustained emotional damages and losses as a result of the bogus and illegal services caused by Richey and Richey Law Firm and those losses have manifested themselves in the Cabezas through fear of losing their home and property, stress, anxiety, anger, loss of consortium, frustration, and other physical manifestations directly related to the illegal acts and omissions

## I.  PARTIES

3. Plaintiffs Jorge Cabeza and Rosa Virginia Cabeza ("Mr. & Mrs. Cabeza or "the Cabezas"), own and reside at the real property known as 11834 White Pine Drive in Hagerstown, MD 21740.

4. Defendant Mia Richey a/k/a Michelle Susan Rheintgen ("Richey") is upon information and belief a resident of California but does business through her company, Defendant Richey Law & Associates d/b/a Richey Real Estate Law Firm, in the State of Maryland as described herein. According to the State Bar of California, Richey is a California barred attorney now known as Michaelle Susan Rheintgen. Richey is not a Maryland licensed attorney and therefore is not entitled to claim any exemption for the claims asserted herein. Richey is liable for the actions of the Richey Law Firm and her employees and agents who acted on her behalf and at her direction as described herein.

5. Defendant Richey Law & Associates, P.A. d/b/a Richey Real Estate Law Firm is a California Corporation which conducted business at multiple locations including 8901 Irvine Center Drive, Suite 900, in Irvine, CA 92618 and 25 Mauchly, Suite 310, Irvine, CA 92618. Upon information and belief Richey is the President of the Richey Law Firm. The Richey Law Firm performed services in the State of Maryland as described herein through its authorized employees and agents including Richey. The trade name Richey Real Estate Law Firm is not registered in the State of Maryland or the State of California and simply, upon information and belief, is an unincorporated name utilized by Richey and Richey Law & Associates to do business with homeowners like the Plaintiffs seeking assistance to modify their mortgage loans which are in default. The Richey Law Firm is not a Maryland licensed law firm and therefore is not entitled to claim any exemption for the claims asserted herein.

6. Richey and the Richey Law Firm hold themselves out as credit services businesses and foreclosure consultants and conduct business on behalf of Maryland residents including the Plaintiffs.   This conclusion is based upon their representations on their website, http://www.richeylawgroup.com/about-us/who-we-are.html, which states:

   Richey Law & Associates is comprised of attorneys that have significant experience in the areas of real estate law, consumer credit law, collection law, and bankruptcy…Our primary goal is to establish a direct relationship with consumers who are dealing with credit difficulties.  Our staff works to build trusting relationships with each of our clients as we aim to help them with their current credit situations and future credit needs.  We understand that dealing with debt or poor credit can be devastating, which is why we strive to provide our clients with reliable information and strategic solutions that are tailored to their individual situations.

7. In fact, neither Richey nor the Richey Law Firm is licensed to perform the work each allegedly does on behalf of Maryland residents, including the Plaintiffs, but each are required by law to be so licensed before then accept any payment(s) and perform any services.

8. Upon information and belief, Richey and Richey Law Firm now do business as the Law Offices of Michelle Rheintgen, PC which is the successor interest to the Richey Law Firm.   This belief is based upon certain disclosures of Richey to the State Bar of California and the California Secretary of State's Office.

9. Not named as a Defendant in this action, the Resource Legal Group is upon information and belief an affiliate of Richey and the Richey Law Firm; Richey and the Richey Law Firm utilized the forms and services of the Resource Legal Group to carry out the illegal activities discussed herein.  The Resource Legal Group and its principles were subject to a public enforcement action by the United States Consumer Financial Protection Bureau last year (at about the same time the events and activities discussed herein occurred) for

activities nearly identical to those discussed herein.  *See Consumer Financial Protection Bureau v. Chance Edward Gordon, et al.*, United States District Court for the Central District of California (Case No. CV 12-06147)(filed July 18, 2012).

## II.  JURISDICTION & VENUE

10. This Court has jurisdiction asserted because Defendants transacted business and performed work and provided services, directly and indirectly through their authorized agents and employees, in Maryland which are the subject to this litigation.  *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103.  Specifically, the Defendants' acts and omissions establish a sufficient nexus with the State of Maryland directly and through their agents by:

    a. Transacting the illegal business activities and services discussed herein in the State of Maryland through their authorized employees and employees.

    b. Causing the tortious injuries described herein which were sustained by the Plaintiffs by the Defendants' direct and indirect acts and omissions in the state.

11.  This Court also has jurisdiction of this matter pursuant to  28 U.S.C. § 1332(a)(1) since (i) the parties are diverse and are residents of different states; and (ii) the amount in controversy and future attorneys' fees to be incurred in this action exceed $75,000.00.  See *Williams v. Bank of New York Mellon*, CIV. CCB-13-680, 2013 WL 2422895 (D. Md. June 3, 2013).

12. Venue is appropriate in this district pursuant to 28 U.S.C.A. § 1391(b)(2) since a substantial part of the events or omissions giving rise to the action herein occurred in the State of Maryland.

### III. FACTS

**A.  THE FORECLOSURE CRISIS**

13. Over the last few years, Maryland, and the entire Nation has been in a foreclosure crisis. Reports show that the worse of the crisis may be behind us, and, if indeed the worst of the crisis is behind us, the effects will be severe and long-lasting.

14. Increased foreclosures have a detrimental effect not only on homeowners who lose unique property and face homelessness, and suffer long-lasting damage to their credit, but also on homes surrounding a foreclosure, and, perhaps, neighborhoods that suffer decreased property values and municipalities that lose tax revenue.

15. Many mortgage servicers have offered permanent loan modification agreements to homeowners who were suffering from economic hardship due to the present economic conditions.

16. These permanent loan modification agreements modify credit terms of the original mortgage note but do not provide homeowners any additional credit.  The permanent loan modification typically does not, as in this matter, involve a refinance, renewal of credit, consolidation, or any waiver to collect after maturity.

17. While the mortgage servicers have offered some modifications the process in which homeowners must obtain a modification is difficult and tedious.  Many so-called real estate processions, as in this case, have a result set up shop as foreclosure consultants, loan modification specialists, and other legitimate sounding service providers when in fact these actors are not legitimate and do not provide bona fide services to help these homeowners.

**B.  WHAT OCCURRED IN THIS CASE**

18. Richey holds herself out to the public in various media including her website known as http://www.richeylawgroup.com/about-us/attorney-profile/california/item/16-mia-richey.html.

19.     To carryout her work Richey claims that she works through a "staff [which] works to build trusting relationships with each of [her] clients as [she and the Richey Law Firm] aim to help [clients] with their current credit situations and future credit needs. [Richey and the Richey Law Firm] understand that dealing with debt or poor credit can be devastating, which is why [they] strive to provide [their] clients with reliable information and strategic solutions that are tailored to their individual situations."

20.     The Cabezas, like many thousands of other Maryland homeowners, have been harmed by the economic conditions harming the Country and Maryland.  As a result their household income has reduced and they have encountered difficultly maintaining the mortgage loan on their home which is currently serviced by Wells Fargo Bank, NA.

21.     On July 1, 2012, due to circumstances beyond their control due to a reduction of household income, the Cabezas fell into default on their mortgage loan.

22.     In July 2012, the Richey Law Firm, acting with the authority and consent of Ms. Richey, contacted the Cabezas by mail stating that they could offer loan modification assistance and had Spanish speaking representatives to help borrowers like the Cabezas. Trying to be proactive to mitigate their default, the Cabezas were contacted by Sofia R. Solis (a/k/a Sophia Solis), an authorized employee or agent of Richey and the Richey Law Firm, on or about July 18, 2012 to provide assistance for the Cabezas to seek a modification of their mortgage loan with Wells Fargo Bank, NA acting as the servicer.

23.     In response to the Cabezas' inquiry about the solicitation, Solis represented on July 18, 2012 to the Cabezas that she and the Richey Law Firm, could obtain a modification of the Cabezas's mortgage loan which would reduce their mortgage interest rate significantly and thereby reduce the monthly sum they were required to pay.

24.     As part Solis' July 18, 2012 offer on behalf of Richey and the Richey Law Firm, the  Cabezas were given a statement which appeared to be in the form of a disclosure pursuant to Regulation Z (i.e. under the Truth in Lending Act).  The disclosure gave the appearance that the transaction and services offered by Richey and the Richey Law Firm, agreed to by the Cabezas, was legitimate and truthful—however the transaction and services were simply false and misleading.  The disclosure also asked for three payments by the Cabezas to Richey and the Richey Law Firm as follows:

   a.     7/18/2012 in the sum of $1,150.

   b.     8/15/2012 in the sum of $575.

   c.     9/15/2012 in the sum of $575.

25.     As part Solis' July 18, 2012 offer on behalf of Richey and the Richey Law Firm, the Cabezas were also required to sign forms prepared by the Resource Legal Group on behalf of Richey and the Richey Law Group which required upfront payment by the Cabezas before any services was made on their behalf by Richey and the Richey Law Group were completed.  These forms included the Defendants' Pre-Litigation Monetary Claims Program Agreement which is also subject to the action brought by the Consumer Financial Protection Bureau.  *See Consumer Financial Protection Bureau v. Chance Edward Gordon, et al.*, United States District Court for the Central District of California (Case No. CV 12-06147)(filed July 18, 2012).

26.      Richey and the Richey Law Firm also requested and required the Cabezas to provide an authorization to release files form so they could allegedly communicate with Wells Fargo about reducing the monthly mortgage terms of the Cabezas for their defaulted mortgage.

27.      In response to Richey and the Richey Law Firm offering the services described above through their authorized agent and paralegal employee Sofia Solis on July 18, 2012, the Cabezas agreed and relied upon the representations and promises and engaged Richey and the Richey Law Firm to provide them these services of a credit services business and made the payments requested on 7/23/2012, 8/12/2012, and 9/10/2012. Each of the payments were deposited by Richey and the Richey Law Firm into their account held by JP Morgan Chase Bank, NA before any services were rendered on behalf of the Cabezas by Richey and the Richey Law Firm.

28.      Over the course of the six months or more, Richey and the Richey Law Firm through their agents and employees represented to the Cabezas that Richey and the Richey Law Firm were working to perform certain credit services described herein on the Cabezas behalf.  These illegal and misleading communications allegedly on behalf of the Cabezas to Wells Fargo occurred on:

    a.  August 13, 2012 at 10:47 A.M. when Sofia R. Solis, an authorized employee or agent of Richey and the Richey Law Firm, contacted Wells Fargo by telephone.

    b.  August 21, 2012 at 4:00 P.M. when Sofia R. Solis, an authorized employee or agent of Richey and the Richey Law Firm, contacted Wells Fargo by telephone.

    c.  August 29, 2012 at 5:48 P.M. when Sofia R. Solis, an authorized employee or agent of Richey and the Richey Law Firm, contacted Wells Fargo by telephone.

d. August 30, 2012 at 1:28 P.M. when Sofia R. Solis, an authorized employee or agent of Richey and the Richey Law Firm, contacted Wells Fargo by telephone.

e. September 6, 2012 at 2:05 P.M. when Sofia R. Solis, an authorized employee or agent of Richey and the Richey Law Firm, contacted Wells Fargo by telephone.

f. September 10, 2012 at 8:22 P.M. when Sofia R. Solis, an authorized employee or agent of Richey and the Richey Law Firm, contacted Wells Fargo by telephone.

g. September 12, 2012 at 10:15 A.M. and 6:56 P.M. when Sofia R. Solis, an authorized employee or agent of Richey and the Richey Law Firm, contacted Wells Fargo by telephone.

h. September 17, 2012 at 6:13 P.M. when Sofia R. Solis, an authorized employee or agent of Richey and the Richey Law Firm, contacted Wells Fargo by telephone.

i. September 28, 2012 at 5:42 P.M. when Sofia R. Solis, an authorized employee or agent of Richey and the Richey Law Firm, contacted Wells Fargo by telephone.

29.    On or about September 20, 2012, Solis represented to the Cabezas that they should wait six months, and she would reapply for a modification on their behalf at that time.  About a month later, on or about October 20, 2012, Solis represented to Mrs. Cabeza by telephone that there was nothing she could do to stop the multiple collection calls from Wells Fargo to the Cabezas and they would have to wait for six months.

30.    Beginning in January 2013, the Cabezas' were assigned to a new representative by Richey and the Richey Law Firm named "Alex."  He requested certain information from the Cabezas related to his purported effort to obtain a modification of the Cabezas' loan (on or about January 28, 2013 and March 1, 2013) but he failed to make any

contacts with Wells Fargo even though the Cabezas complied with each of his requests and relied upon his promise to complete a modification application for them.

31.     In the communications detailed above, Richey and the Richey Law Firm through their agents and employees represented to Wells Fargo that they only wanted the Cabezas considered for a Making Home Affordable Loan Modification ("HAMP") and no other alternative.  Richey and the Richey Law Firm also failed to identify the Cabezas' authentic hardship to Wells Fargo which would qualify them for a loan modification.

32.     At no time period when Richey and the Richey Law Firm were communicating with Wells Fargo as described in ¶¶ 28-30 did the Cabezas ever authorize Richey and the Richey Law Firm to only seek a HAMP modification on their behalf.  The Cabezas simply desired a sustainable loan modification whether it was HAMP or some other in-house modification made little difference to the Cabezas.

33.     At no time period when Richey and the Richey Law Firm were communicating with Wells Fargo as described in ¶¶ 28-30 were the Cabezas ever notified by Richey, the Richey Law Firm, or any employee or agent on their behalf that there were any concerns about the Cabezas' qualified hardship.

34.      Richey and the Richey Law Firm failed to communicate with Wells Fargo subsequent to September 28, 2013 on the Cabezas' behalf and simply ceased to perform any of the services they had promised to perform on behalf of the Cabezas.  Richey and the Richey Law Firm never requested that Wells Fargo consider the Cabezas for a non-HAMP loss mitigation option.

35.     On or about June 10, 2013 at 5:00P.M. Ms. Richey contacted the Cabezas by telephone at their home in Maryland and represented for the first time to Cabezas that she would be taking over the purported services formally provided by Ms. Solis at Ms. Richey's direction.  When the Cabezas informed her that despite her and her company's misrepresentations, misstatements, and illegal efforts, that they had obtained a modification on their own, Ms. Richey offered to refund the advance fees she had already collected but only if the Cabezas waived their rights in violation of Md. Code Ann., Com. Law § 14-1907. The Cabezas declined to accept the illegal offer.

36.     As a direct and proximate result of Richey and the Richey Law Firm's failure to follow through on behalf of the Cabezas, Wells Fargo on behalf of Freddie Mac and through their appointed, substitute trustees commenced a foreclosure action against the Cabezas in the Circuit Court for Washington County, Maryland (Case No. 21C13046857) ("Foreclosure Action") on April 9, 2013.

37.     Shortly after the filing of the Foreclosure Action, the Cabezas, having grown frustrated with the lack of communications from Richey and the Richey Law Firm, retained the services of a bona fide Maryland Housing Counselor, Donna Rose at the Washington Community Action Council in Hagerstown.  Ms. Rose contacted Wells Fargo on April 25, 2013 at 10:06 A.M. to see and apply for appropriate loss mitigation options available to the Cabezas to avoid the foreclosure sale.

38.     As their right under Maryland law, the Cabezas also timely requested foreclosure mediation on April 22, 2013 in the Foreclosure Action with Wells Fargo under the direction of the Maryland Office of Administrative Hearings to see what loss mitigation options might be available to the Cabezas to avoid the foreclosure sale.

39.      As a result of the Ms. Rose's and the Cabezas' efforts described in ¶¶ 37-38, Wells Fargo offered the Cabezas a non-HAMP loan modification which was sustainable for them and their family for the long-term.  Despite their efforts to mitigate the damages proximately caused by Richey and the Richey Law Firm, the Cabezas did sustain damages and losses which could have been avoided if Richey and the Richey Law Firm had actually provided bona fide services as promised and not simply ignored the alternatives available to the Cabezas.  These damages and losses include:

a. Payment of fees for services to Richey and the Richey Law Firm before the services were actually performed as described in ¶ 24.

b. Damage to credit by the filing of a foreclosure action in the public records which would have been avoided if the Richey and the Richey Law Firm had pursued non-HAMP loss mitigation options.

c. Emotional damages and losses by the Cabezas with physical manifestations caused by the fear of the loss of their home, stress and anger, anxiety, etc.

**COUNT I:  Maryland Credit Services Businesses Act,  Md. Code Ann. Com. Law §14-1901, *Et Seq*. & Maryland's Consumer Protection Act, Md. Code Ann. Com. Law §13-101 *Et Seq*.**

40.      Plaintiffs incorporate the foregoing paragraphs as if restated herein.

41.      Pursuant to Md. Code Ann., Com. Law § 14-1901(e), a "Credit Services Business" under Maryland law is defined as "any person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such person can or will sell, provide, or perform, any of the following services in return for the payment of money or other valuable consideration: (i) Improving a consumer's credit record, history, or rating or establishing a new credit file or record; (ii) Obtaining an

extension of credit for a consumer; or (iii) Providing advice or assistance to a consumer with regard to either subparagraph (i) or (ii) of this paragraph."

42. An "Extension of credit" as related to a credit services business "means the right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes."  Md. Code Ann., Com. Law § 14-1901(f).

43. Richey and the Richey Law Firm acted Credit Services Businesses in their actions with the Cabezas described herein.

44. Maryland law requires that "[a] credit services business is required to be licensed."  Md. Code Ann., Com. Law § 14-1903.

45. A credit services business must also give a consumer to whom it is providing services, a written statement which will detail the services provided, their right to certain required information for the consumer, and the total fees to be charged to the consumers before the credit services business actually performs any services on the consumer's behalf. Md. Code Ann., Com. Law § 14-1904 & 14-1905.

46. Richey and the Richey Law Firm's written agreement with the Cabeza's failed to meet the requirements described in ¶ 45.

47. A credit services business must also provide a consumer a written right to cancel the contract for credit services he establishes with a consumer in a specific form.  Md. Code Ann., Com. Law § 14-1906.

48. Richey and the Richey Law Firm's failed to provide the Cabezas with the required right to cancel described in ¶ 47.

49. Richey and the Richey Law Firm also charged and collected fees from the Cabezas before they performed any services.

14

50.  Richey and the Richey Law Firm's acts herein were willful and knowing.   This is based upon the nature of the work Richey and the Richey Law Firm performed and their knowledge that the services provided to Maryland consumers, like the Cabezas, was illegal and the Defendants' ratification of the illegal forms and assistance provided to them through their affiliate after their affiliate's practices were challenged by federal authorities (see ¶ 9).   In the alternative Richey and the Richey Law Firm's acts in relation to the Cabezas was negligent.

51. A credit services business which willfully fails to comply with any requirement imposed by the Maryland Credit Services Businesses Act, "is liable to the consumer in an amount equal to the sum of: (1) Any actual damages sustained by the consumer as a result of the failure; (2) A monetary award equal to 3 times the total amount collected from the consumer, as ordered by the Commissioner; (3) Such amount of punitive damages as the court may allow; and (4) In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."  Md. Code Ann., Com. Law § 14-1912(a).

52. A credit services business which negligently fails to comply with any requirement imposed by the Maryland Credit Services Businesses Act, in failing to comply with any requirement imposed under the law "with respect to any consumer is liable to that consumer in an amount equal to the sum of: (1) Any actual damages sustained by the consumer as a result of the failure; and (2) In the case of any successful action to enforce any liability under this section, the cost of the action together with reasonable attorney's fees as determined by the court."  Md. Code Ann., Com. Law § 14-1912(b).

53. "Each sale of the services of a credit services business that violates any provision of [Maryland Credit Services Businesses Act] is [also] an unfair or deceptive trade practice under Title 13 of this article."  Md. Code Ann., Com. Law § 14-1914.

WHEREFORE, Plaintiffs pray for the following relief against Defendants for their violations of the Maryland Credit Services Businesses Act and the Maryland Consumer Protection Act:

A.  They be awarded as part of this claim a sum of no less than $175,000.00 which represents their compensatory damages and losses as a result of the Defendants direct and indirect, unfair or deceptive and unlawful practices as described herein pursuant to Md. Code Ann., Com. Law §§ 13-408 & 14-1912;

B.  They be awarded punitive damages, for Defendants' willful violations of Maryland law, as the Court may allow pursuant to Md. Code Ann., Com. Law § 14-1912;

C.  They be awarded their reasonable attorney's fees and costs pursuant to Md. Code Ann., Com. Law §§ 13-408 & 14-1912; and

D.  That their claim should include such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____/s/_____

PHILLIP R. ROBINSON (Bar No. 27824)
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703
PHONE:  (301) 620-1016
FAX:  (301)620-1018
probinson@legglaw.com

*ATTORNEYS FOR PLAINTIFFS*