IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td>JORGE CABEZA, <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiffs,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td>CIVIL NO.: WDQ-13-3511</td></tr>
<tr><td>RICHEY LAW & ASSOCIATES d/b/a<br>RICHEY REAL ESTATE LAW FIRM,<br><em>et al.</em>,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Jorge Cabeza and Rosa V. Cabeza ("the Plaintiffs") sued Richey Law & Associates d/b/a Richey Real Estate Law Firm and Mia Richey a/k/a Michele Susan Rheintgen ("the Defendants") for violations of the Maryland Credit Services Business Act ("MCSBA")[1] and the Maryland Consumer Protection Act ("MCPA").[2] Pending are the Plaintiffs' motion for default, the Defendants' motion to dismiss for failure to state a claim or, in the alternative, summary judgment, the Plaintiffs' motion for partial summary judgment, and the Defendants' motion to dismiss for lack of subject matter jurisdiction. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the

---

[1] Md. Code. Ann. Com. Law §§ 14-1901, *et seq.*

[2] Md. Code. Ann. Com. Law §§ 13-101, *et seq.*

following reasons, the Plaintiffs' motion for entry of default will be denied, the Defendants' motion to dismiss for lack of subject matter jurisdiction will be denied, the Defendants' motion for summary judgment will be denied, and the Plaintiffs' motion for partial summary judgment will be granted in part and denied in part.

I.  Background[3]

The Plaintiffs have a mortgage on their property located at 11834 White Pine Drive, Hagerstown, Maryland.  ECF No. 1 ¶¶ 3, 20.  The current servicer for the loan is Wells Fargo Bank, NA.  *Id.* ¶ 20.  On July 1, 2012, the Plaintiffs defaulted on the loan.  *Id.* ¶ 20.

Richey is an attorney admitted in California and president of the Richey Real Estate Law Firm.  *Id.* ¶ 4-5.  Richey Real Estate Law Firm "is an unincorporated name utilized by Richey and Richey Law Associates to do business with homeowners like the Plaintiffs seeking assistance to modify their mortgage loans

_____

[3] The facts are taken from the complaint, ECF No. 1; the Plaintiffs' motion for partial summary judgment, ECF No. 11; the Plaintiffs' Response to the Defendants' motion to dismiss for lack of subject matter jurisdiction, ECF No. 19; and their supporting exhibits.  The Defendants do not offer a competing set of facts or challenge the Plaintiffs' factual conclusions.  *See* ECF Nos. 10, 16, 17, 18, 21.  The Defendants' arguments are legal, not factual.

In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

which are in default."[4]  *Id.* ¶ 5.  The Defendants are not

licensed in Maryland.[5]  *Id.*  In July 2012, the Richey Law Firm

contacted the Plaintiffs by mail "stating that they could offer

loan modification assistance and had Spanish speaking

representatives to help borrowers like the [Plaintiffs]."[6]  On

July 18, 2012, Sofia Solis, an employee of the Richey Law Firm,

contacted the Plaintiffs offering them assistance in seeking a

mortgage modification with the Plaintiffs' mortgage servicer.[7]

*Id.* ¶ 22.  The Plaintiffs accepted the offer of assistance.  *Id.*

---

[4] Richey Real Estate Law Firm is not registered in Maryland or
California.  *See* ECF No. 1 ¶ 5.

[5] Jessica Cabeza, the Plaintiffs' daughter, conducted a public
records search on the Maryland Department of Financial
Regulation's Financial Regulation Public Query Page.  *See* ECF
No. 11-2 at 2.

[6] *Id.* ¶ 22.  "Richey claims that she works through a 'staff
[which] works to build trusting relationships with each of [her]
clients as [she and the Richey Law Firm] aim to help [clients]
with their current credit situations and future credit needs.
[Richey and the Richey Law Firm] understand that dealing with
debt or poor credit can be devastating, which is why [they]
strive to provide [their clients] with reliable information and
strategic solutions that are tailored to their individual
situations.'"  *Id.* at 19 (alterations in original) (*quoting*
http://www.richeylawgroup.com/about-us/attorney-
profile/California/item/16-mia-richey.html) (website no longer
available).

[7] "Solis represented . . . that she and Richey Law Firm[] could
obtain a modification of the [Plaintiffs'] mortgage loan which
would reduce their mortgage interest rate significantly and
thereby reduce the monthly sum they were required to pay."  *Id.*
¶ 23.

Solis provided the Plaintiffs with a disclosure statement.[8] *Id.* ¶ 24.  The statement also requested three payments from the Plaintiffs totaling $2,300.  *See id.*  The Plaintiffs also signed forms prepared by the Resource Legal Group[9] which required the $2,300 be paid before Richey Law Firm provided any services.[10] *Id.* ¶ 25.  Relying on "the representations and promises" of the Defendants, the Plaintiffs made payments to the Defendants on July 23, August 12, and September 10, 2012.  *Id.* ¶ 27.  There was no fully signed and executed contract between the Plaintiffs and the Defendants, and the Defendants "[did] not have any surety or other insurance."  ECF No. 11-1 at 5.

Between August and September, 2012, Solis contacted Wells Fargo nine times.  ECF No. 1 ¶ 28.  Solis told Wells Fargo that

---

[8] The statement granted "Mia S. Richey, Esq. and others permission by the Plaintiffs to communicate with Wells Fargo about the Plaintiffs' mortgage."  ECF No. 20 at 14.

[9] The Resource Legal Group is an affiliate of the Defendants, and prepared forms of their behalf.  *See id.* ¶ 9.  Resource Legal Group was a defendant in a similar case in which the Consumer Financial Protection Bureau sued a lawyer, law firm, and its associates for violating federal law when they promised home owners loan modification assistance and charged up-front fees.  *See Consumer Fin. Prot. Bureau v. Chance Gordon*, CV-12-6147 RSWL (MRWx) (C.D. Cal. July 18, 2012).

   In a letter to the Plaintiffs, Richey claimed that she has never heard of the Resource Legal Group, but the Defendants do not allege that Richey is not connected Resource Legal Group in any of their arguments.  *See* ECF No. 11-8 at 2.

[10] The Plaintiffs also provided a release form so that the Defendants could "communicate with Wells Fargo about reducing the monthly mortgage terms . . . ."  ECF No. 1 ¶ 26.

the Plaintiffs should only be considered for a modification under the Home Affordable Modification Program ("HAMP").[11]  Wells Fargo was concerned that the Plaintiffs did not meet HAMP's hardship criteria.  *See id.* at ¶¶ 31-33.  The Defendants "failed to identify the [Plaintiffs'] authentic hardship to Wells Fargo" and never informed the Plaintiffs that there were any concerns regarding their qualified hardship.  *See id.* at ¶¶ 31-33.

On September 20, 2012, Solis told the Plaintiffs that they should wait six months and then reapply for a modification.  *Id.* ¶ 29.  Solis told the Plaintiffs "that there was nothing she could do to stop multiple collection calls from Wells Fargo . . . ."  *Id.*  On September 28, 2013, Solis made the Defendants' last contact with Wells Fargo.  *See id.* at ¶¶ 34.

In January 2013, the Plaintiffs were contacted by "Alex," an employee of the Defendants who would be the Plaintiffs' new representative.  *Id.* ¶ 30.  On January 28 and March 1, 2013, Alex requested information from the Plaintiffs so that he could continue the process of getting them a loan modification.  *See id.*  The Plaintiffs provided the information.  *Id.*  Alex never contacted Wells Fargo while representing the Plaintiffs.  *Id.* ¶ 30.

---

[11] The Defendants never told the Plaintiffs that they were only seeking a HAMP modification for the Plaintiffs, and the Plaintiffs never authorized this.  *See* ECF No. 1 ¶ 31-32.

On April 9, 2013, Wells Fargo began a foreclosure action against the Plaintiffs. *Id.* ¶ 36. Waiting for the Defendants to obtain a modification and the stress of foreclosure caused the Plaintiffs "a significant amount of emotional distress." ECF No. 19-1 at 4 (affidavit of Rosa V. Cabeza). Ms. Cabeza suffered from "frustration, sleeping problems, headaches and numbness, [a] twitching eye, and other physical [symptoms]." *Id.* Mr. Cabeza experienced "anger, fear . . . frustration, sleeping problems, and other physical [symptoms]." ECF No. 19-2 at 2-3 (affidavit of Jorge Cabeza).[12]

"Shortly after the Foreclosure Action, the [Plaintiffs], having grown frustrated with the lack of communications from [the Defendants]" retained the services of Maryland Housing Counselor, Donna Rose. ECF No. 1 ¶ 37. On April 25, 2013, Rose contacted Wells Fargo about the Plaintiffs' loss mitigation options. *Id.* Wells Fargo provided the Plaintiffs with a non-HAMP modification. *Id.* ¶ 39. Because of the delay in obtaining a modification, the Plaintiffs incurred $1,750.00 in foreclosure costs and fees added to their mortgage account. *See* ECF No. 19-1 at 3.

---

[12] The Plaintiffs' daughter claims that she was with her parents throughout the relevant time and witnessed the physical manifestations of their emotional distress. *See* ECF No. 19-3 at 2 (affidavit of Jessica Cabeza).

6

On June 10, 2013, Richey called the Plaintiffs and told them "that she would be taking over the purported services formerly provided by [] Solis at [] Richey's direction."  ECF No. 1 ¶ 35.  The Plaintiffs informed Richey that they had already obtained a modification.[13]  *Id.*  On December 4, 2013, Richey sent a letter to the Plaintiffs' lawyer so that he could "understand the facts before proceeding further with the lawsuit."[14]  ECF No. 11-8 at 2.  In the letter, Richey admitted that "[her] firm [] assist[ed] [the Plaintiffs] with a loan modification," the firm accepted fees from the Plaintiffs, Solis and Alex were paralegals with the firm,[15] and the Defendants were in the business of offering assistance with loan modifications. ECF No. 11-8 at 2-3.

---

[13] The Plaintiffs describe the conversation with Richey in greater detail, but the Court notes that the conversation following the Plaintiffs' statement about their modification was an attempt at compromise and cannot be considered under Fed. R. Evid. 408.  *See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.3d 652, 654-55 (4th Cir. 1988).

[14] Fed. R. Evid. 408 has a "well-recognized exception regarding admissions of fact as distinguished from hypothetical or provisional concessions conditioned upon the settlement's completion."  *NLRB v. Gotham Indus., Inc.*, 406 F.2d 1306, 1313 (1st Cir. 1969); *see also Vulcan Hart Corp. v. NLRB*, 718 F.2d 269, 277 (8th Cir. 1983).

[15] Richey said that both paralegals left the firm in April 2013 because she learned that Solis "was not an honest person."  ECF No. 11-8 at 3.  Richey contends that Solis represented that she was a friend of the Plaintiffs and requested the firm's help in assisting them.  *Id.* at 2.

On November 21, 2013, the Plaintiffs sued the Defendants for violations of the MCSBA and MCPA.  ECF No. 1.  On November 30, 2013, Richey was served.  ECF No. 5.  On December 3, 2013, Richey Law & Associates was served through the State of Maryland Department of Assessments and Taxation.  ECF No. 8.  On December 23, 2013, Richey attempted to file a motion to dismiss or, in the alternative, summary judgment.  ECF No. 6.  The Court returned the motion to Richey because it did not comply with Local Rule 102.  *Id*.  Richey filed the same motion on January 6, 2014, and it was returned to her again.  ECF No. 7.  On January 10, 2014, the Plaintiffs moved for entry of default.  ECF No. 9. On January 17, 2014, Richey's motion was entered on the docket without the signature of an attorney admitted here because she represented that she would be proceeding *pro se*.  *See* ECF No. 10 at 1.  On January 30, 2014, the Plaintiffs opposed the motion and made a cross motion for summary judgment.  ECF No. 11.

On January 31, 2014, Seann P. Malloy, Esquire entered an appearance for all Defendants,[16] opposed the Plaintiffs' motion for entry of default,[17] and filed a motion to dismiss for lack of

---

[16] ECF No. 14.

[17] ECF No. 16.

subject matter jurisdiction.[18]  On February 18, 2014, the
Defendants responded to the Plaintiffs' cross motion for summary
judgment,[19] and the Plaintiffs opposed the Defendants' motion to
dismiss for lack of subject matter jurisdiction.[20]  On March 3,
2014, the Plaintiffs filed their reply for their motion for
summary judgment.  ECF No. 20.  On March 7, 2014, the Defendants
filed a reply for their motion to dismiss for lack of subject
matter jurisdiction.  ECF No. 21.

II. Analysis

  A. Legal Standards

    1. Subject Matter Jurisdiction

    Federal district courts have "only the jurisdiction
authorized them by the United States Constitution and by federal
statute."  *See United States ex rel. Vuyyuru v. Jadhav,* 555 F.3d
337, 347 (4th Cir.2009) (*citing Bowles v. Russell,* 551 U.S. 205,
212 (2007)).  Generally, our subject matter jurisdiction in
civil suits is limited to those in which: (1) there is complete
diversity of citizenship between the parties; and/or (2) a
federal question has been raised.  *See* 28 U.S.C. §§
1331 (federal question) & 1332 (diversity); *see also Rayner v.*

---

[18] ECF No. 17.  In the motion, Richey Law & Associates
incorporated Richey's motion to dismiss (ECF No. 10) by
reference.  *See id.* at 1.

[19] ECF No. 18.

[20] ECF No. 19.

*Smirl,* 873 F.2d 60, 63 (4th Cir.1989) (in the absence of diversity jurisdiction, a federal district court may only exercise subject matter jurisdiction if it has been presented with a properly plead federal question).

The plaintiff bears the burden of proving subject matter jurisdiction. *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.,* 523 F.3d 453, 459 (4th Cir. 2008). A motion under Federal Rule of Civil Procedure 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). If the plaintiff fails to allege any set of facts upon which the court may base jurisdiction, the motion must be granted. *See Jadhav*, 555 F.3d at 347.

2. Entry of Default

Under Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear. In reviewing a motion for default judgment, the plaintiff's well-pled factual allegations are accepted as true as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001).

Entry of a default judgment is left to the court's discretion, and the Fourth Circuit has a "strong policy" that

10

"cases be decided on the merits." *Dow v. Jones*, 232 F. Supp. 2d
491, 494-95 (D. Md. 2002) (*citing United States v. Shaffer
Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).  However,
"default judgment is available when the 'adversary process has
been halted because of an essentially unresponsive party.'"
*Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md.
2006) (*quoting SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md.
2005) (internal quotations omitted)).

   3. Summary Judgment

   The Court "shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).[21]  In considering the motion, the judge's function
is "not . . . to weigh the evidence and determine the truth of
the matter but to determine whether there is a genuine issue for
trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249
(1986).  A dispute about a material fact is genuine "if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party."  *Id*. at 248.

   The Court must "view the evidence in the light most
favorable to . . . the nonmovant and draw all reasonable

---

[21] Rule 56(a), which "carries forward the summary-judgment
standard expressed in former subdivision (c)," changed "genuine
'issue' [to] genuine 'dispute,'" and restored the word "'shall'
. . . to express the direction to grant summary judgment."  Fed.
R. Civ. P. 56 (advisory committee's note).

inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

When cross motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be reviewed in the light most favorable to the nonmovant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

B. The Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Plaintiffs assert that the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). ECF No. 1 ¶ 11. The Defendants do not dispute the complete diversity of the parties. *See* ECF No. 17-1 at 1. The Defendants argue that the Plaintiffs have failed to establish that more than $75,000 is in controversy. *Id.* at 1-3.

"[D]iversity jurisdiction is to be assessed at the time the lawsuit is commenced." *Freeport-McMoRan, Inc. v. K N Energy,*

*Inc.*, 498 U.S. 426, 429 (1991).  Thus, the amount in controversy

is determined by the allegations in the complaint.[22]

The amount-in-controversy requirement is satisfied if

either the gain to the plaintiff or the cost to the defendant is

greater than $75,000.  *Gonzalez v. Fairgale Props. Co.*, 241 F.

Supp. 2d 512, 517 (D. Md. 2002).  A general, conclusionary

allegation of the amount in controversy is usually sufficient.[23]

"[A] defendant seeking dismissal based on the amount in

controversy must show that it is legally impossible for the

plaintiff to recover the jurisdictional amount."[24]

---

[22] *See Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d
1014, 1017 (4th Cir.1981) ("Ordinarily the jurisdictional amount
is determined by the amount of the plaintiff's original claim,
provided that the claim is made in good faith.").

[23] *Gibbs v. Buck,* 307 U.S. 66, 72 (1939); *see also Slumber
Parties, Inc. v. Cooper*, No. RDB-12-00791, 2012 WL 2915110, at
*5 (D. Md. July 16, 2012); *Impact Office Products, LLC v. Krug,*
AW-10-01864, 2010 WL 4296344, at * 2 (D. Md. Oct.29, 2010)
("[C]ourts defer to the allegations in the complaint when
plaintiffs file in federal court in the first instance.").

[24] *VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC*, JKB-11-1763,
2011 WL 6257190, at * 1 (D. Md. Nov.29, 2011); *see also
Shanaghan v. Cahill,* 58 F.3d 106, 112 (4th Cir. 1995) ("[T]he
court should look to the face of the complaint itself to
determine whether it is a legal certainty that plaintiff's
claims do not reach the required amount.  Unless the claim for
an amount over the jurisdictional prerequisite is made in bad
faith, or unless it is plain from the complaint that an amount
less than the jurisdictional amount is all that is at issue, the
district court has jurisdiction over the case . . . .")
(internal citations omitted).

The Plaintiffs pled $175,000 in compensatory damages.[25]   ECF No. 1 ¶ 53.   The Defendants assert that the only damages legally available to the Plaintiffs based on the complaint are the $2,300.00 in fees paid by the Plaintiffs. *See* ECF No. 17-1 at 2-3.

1. Damage to Credit and Foreclosure Costs

The Plaintiffs allege that the Defendants' "delays, misrepresentations, and illegal services" caused the Plaintiffs to lose the opportunity to obtain an earlier modification, resulting in Wells Fargo starting foreclosure proceedings, and damage to the Plaintiffs' credit. *See* ECF No. 1 ¶ 2.   The Defendants argue that these damages cannot satisfy the jurisdictional threshold because they are too speculative and the statutory violations in the complaint "are not the actual or proximate cause of the alleged damage . . . ."   ECF Nos. 17-1 at 1, 7; 21 at 2.

Because the MCPA only provides a private cause of action "for injury or loss sustained . . . as the result of a practice prohibited by this title,"[26] an individual must "establish the

---

[25] The Plaintiffs provide an itemization of damages in ECF No. 19-4 at 9-11.  They include $2,300 for the fee paid to the Defendants, $1,750 for foreclosure costs and fees, $78,000 for emotional damages with physical manifestations, $30,000 for damage to the Plaintiffs' credit, $70,000 in statutory punitive damages, and attorney's fees estimated at $45,000. *Id.*

[26] Md. Code. Ann., Com. Law § 13-408(a).

nature of the actual injury or loss that he . . . has allegedly
sustained *as a result* of the prohibited practice."[27]  Similarly,
the MCSBA requires an "actual [injury] sustained by the consumer
as a result of the failure."[28]  The Defendants argue that the
Plaintiffs have only alleged "technical violations" of the MCPA
and MCSBA, and that the damage to the Plaintiffs' credit was not
caused by these violations, but was allegedly caused by the
Defendants' failure to negotiate a non-HAMP loan modification
for the Plaintiffs.  *See* ECF Nos. 17-1 at 7; 21 at 2, 5.

The Plaintiffs have alleged several violations of the
MCSBA, including failure to obtain a license, failure to provide
the Plaintiffs with a written contract and right to cancel,
collection of fees before rendering services, and failure to
maintain a surety bond.  *See* ECF No. 1 ¶¶ 41-50.  The Plaintiffs
also allege that the Defendants "[e]ngage[d], directly or
indirectly, in an[] act, practice, or course of business which
operate[d] as a fraud or deception on a[] person in connection
with the offer or sale of the services of a credit services
business" in violation of § 14-1902(5).[29]  Any violation of the

---

[27] *Lloyd v. General Motors Corp.*, 916 A.2d 257, 280 (Md. 2007)
(emphasis added).

[28] Md. Code. Ann., Com. Law § 14-1912(a)(1) (willful conduct);
(b)(1) (negligent conduct).

[29] *See* ECF No. 11-1 at 11.  The Plaintiffs do not cite this
provision of the MCSBA in the complaint.  However, throughout

MCSBA is an unfair or deceptive trade practice under the MCPA. *See* Md. Code. Ann., Com. Law §§ 13-301, 14-1914.

The Defendants' contention that the Plaintiffs cannot legally assert that their changed credit and foreclosure were caused by "technical violations" of the statutes is incorrect.[30] However, assuming, for the sake of argument, that the

---

the complaint they assert that the Defendants committed a fraud, misled the Plaintiffs, and the Plaintiffs relied on these promises. *See, e.g.*, ECF No. 1 ¶ 1-2. These allegations were incorporated by the Plaintiffs into the description of Count I in the complaint. *See id.* ¶ 40.

To follow the Defendants' logic and read the complaint as asserting only "technical violations" would breach the "familiar canon of construction that a construction of a pleading is to be preferred where reasonably possible which will give effect to all of its material allegations." *Bachman v. Seaboard Air Line R. Co.*, 80 F. Supp. 976, 979 (E.D.S.C. 1948); *see also Whittington v. Sewer Const. Co., Inc.*, 367 F. Supp. 1328, 1330 (S.D. W.Va. 1973); *Foote v. FFoulke*, 55 A.D. 617, 618 (N.Y. App. Div. 1900) ("It will not do, however, to take words used in one part of the complaint, and, by separating them from the context and considering them without reference to the complaint as a whole, to draw from them an inference favorable to the defendant's theory, which is opposed to the one deduced from a reading of the whole complaint, and the one which the pleader evidently had in mind in framing it.").

[30] If a company advertises a good or service with the representation that its actions are lawful, even though it does not have a license, such a representation communicates to the consumer that the company has "a sponsorship, approval . . . [or] characteristic . . . which [it does] not have." *Golt v. Phillips*, 517 A.2d 328, 332 (Md. 1986) (*quoting* § 13-301(2)). Damages that flow from the customer's reliance on this representation are actual damages. *See id.* (plaintiff could claim lost rent and the cost of replacement lodgings when the plaintiff's landlord did not obtain a license to lease the premises as a multiple family dwelling, even though it was the condition of the premises and not the lack of the license itself that led the plaintiff to abandon the unit).

foreclosure fees and alleged damage to the Plaintiffs' credit could not be caused by the lack of a license, failure to provide the Plaintiffs with a written contract and right to cancel, the collection of fees before rendering services, and the failure to maintain a surety bond -- the Plaintiffs have alleged that the Defendants engaged in "(1) an unfair or deceptive practice or misrepresentation that (2) [was] relied upon, and (3) cause[d] [them] actual injury" in violation of the MCPA.[31]  *Stewart v. Bierman,* 859 F. Supp. 2d 754, 768 (D. Md.2012) (*citing Lloyd v. Gen. Motors Corp.,* 916 A.2d 257, 277 (Md. 2007)).  Several courts have determined that damage to credit and lost mitigation opportunities fulfill the MCPA's actual damage requirement.[32]

The damages alleged by the Plaintiffs are recoverable under the statutes.  Although the Defendants contend that the Plaintiffs have "failed to show causation,"[33] whether and how much of the alleged damages were caused by the Defendants'

---

[31] *See, supra* Note 26.

[32] *See, e.g., Marchese v. JP Morgan Chase Bank*, 917 F. Supp. 2d 452, 468 (D. Md. 2013); *Barry v. EMC Mortg. Corp.*, No. DKC 10-3120, 2012 WL 3595153, at *8 (D. Md. Aug. 17, 2012); *Allen v. CitiMortgage,* Civil No. CCB-10-2740, 2011 WL 3425665, at *8 (D. Md. Aug. 4, 2011); *Hauk v. LVNV Funding,* 749 F. Supp. 2d 358, 369 (D. Md. 2010); *Franklin Credit Mgmt. Corp. v. Nefflen*, 57 A.3d 1015, 1020 (Md. Ct. Spec. App. 2012).

[33] ECF No. 21 at 5.

actions are questions for a jury, not a determination for a Rule 12(b)(1) motion.

2. Emotional Damages

The Defendants contend that emotional damages are not available under the MCPA and MCSBA.[34]   ECF No. 17-1 at 1, 3.

If the Plaintiffs show some physical manifestation of their emotional distress, damages for emotional distress are recoverable under the statutes.[35]   Here, the Plaintiffs allege that Ms. Cabeza suffered from "sleeping problems, headaches and numbness, [a] twitching eye, and other physical [symptoms]"[36] and Mr. Cabeza experienced "sleeping problems[] and other physical [symptoms]."[37]   Accordingly, the Plaintiffs' claims for emotional distress count toward the jurisdictional amount.

---

[34] Defendants also argue that the Plaintiffs cannot show that their emotional damages were caused by the alleged violations of the statutes.   ECF No. 21 at 2.   Because the Court dispensed with this argument in relation to the Plaintiffs' damaged credit, it will not be addressed here.

[35] *See Hoffman v. Stamper*, 867 A.2d 276, 298 (Md. 2005); *see also Marchese*, 917 F. Supp. 2d at 468; *Barry*, 2012 WL 3595153, at *8; *Allen*, 2011 WL 3425665, at *8.

[36] ECF No. 19-1 at 2.

[37] ECF No. 19-2 at 2-3.

3. Attorney's Fees

"If a state statute provides for attorneys' fees, such fees are also included as part of the amount in controversy." *Williams v. Bank of N.Y. Mellon*, No. CCB-13-680, 2013 WL 2422895, at *1 (D. Md. June 3, 2013).  The attorney's fee calculation can include the amount already spent on the litigation and "a reasonable estimate of potential attorney's fees." *Williams*, 2013 WL 2422895, at *3; *see also Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013).  Both the MCPA and MCSBA allow plaintiffs to recover attorney's fees.  Md. Code. Ann., Com. Law §§ 13-408(c); 14-1912(a)(4).

As of January 2014, the Plaintiffs had incurred $18,600 in legal fees.  ECF No. 19-4 at 4.  The Plaintiffs' attorney estimates that he will spend more than 100 hours on this case at an hourly rate of $350 an hour.[38]  *Id.* at 3.

The Defendants contend that "each case is different and experience in one case is insufficient to determine the amount of attorney's fees likely to occur in [an]other case."  This reasoning would make it difficult to estimate potential attorney's fees in *any* case; it is undisputed that potential attorney's fees are part of the jurisdictional calculation.  *See Williams*, 2013 WL 2422895, at *3.

---

[38] The Plaintiffs' attorney also provides the attorney's fees incurred in a similar case in which he was counsel and billed more than 112 hours.  *See* ECF No. 19-4 at 2-3.

Because the Defendants have failed to carry their burden to show that "[it is legally impossible for the [P]laintiff[s] to recover the jurisdictional amount,"[39] the Court will deny their motion to dismiss for lack of subject matter jurisdiction.

C. The Plaintiffs' Motion for Entry of Default

Although the Defendants did not timely file their motions, the "adversary process has [not] been halted because of an essentially unresponsive party." *Disney Enters., Inc.*, 446 F. Supp. 2d at 405. Accordingly, the Court will deny the Plaintiffs' motion for entry of default. *See Dow*, 232 F. Supp. 2d at 494-95.

D. The Defendants' Motion for Summary Judgment

The Defendants argue that they are entitled to summary judgment because the Richey Real Estate Law Firm is not a "credit servicer business" and the Plaintiffs are not "consumers" under the MCSBA. ECF No. 10 at 11. The Defendants also contend that the Plaintiffs cannot sue Richey in her individual capacity.[40] ECF No. 18 at 11.

---

[39] *VCA Cenvet, Inc.*, 2011 WL 6257190, at * 1.

[40] The Defendants also allege that the Plaintiffs are violating a forum selection clause in the parties' Pre-Litigation Claims Program Agreement. *See* ECF Nos. 21 at 3; 21-1 at 7. The Defendants raised this argument for the first time in their reply in support of the Defendants' motion to dismiss for lack of subject matter jurisdiction. *See* ECF No. 21 at 3.

An argument based on a forum selection clause is treated as a Rule 12(b)(3) motion for improper venue. *Sucampo Pharm., Inc.*

1. Definition of a Credit Services Business

The Maryland legislature determined that "consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit." Md. Code. Ann., Com. Law § 13-102(a)(1). The Legislature thought that current federal and state statutes did not protect consumers from deceptive practices and passed the MCPA and other consumer protection laws to fill the void. § 13-102(a)(2); *see also Citaramanis v. Hallowell*, 613 A.2d 964, 968 (Md. 1992); *Barry*, 2012 WL 3595153, at *8; *Allen,* 2011 WL 3425665, at *6. The MCPA "is intended to be liberally construed in order to achieve its consumer protection objectives." *Barry*, 2012 WL 3595153, at *8; *Allen,* 2011 WL 3425665, at *6.

---

*v. Astellas Pharma., Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). Generally, an objection to improper venue is waived if there is a prior Rule 12 pleading. *See* Fed. R. Civ. P. 12(g)(h); *Sucampo Pharm., Inc.*, 471 F.3d at 549; *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 642 (E.D. Va. 1997).

Because there has been no formal motion for improper venue, the Defendants do not explain why they were unaware of a forum selection clause contained in a contract mentioned in the complaint, and the Plaintiffs had no opportunity to respond to the Defendants' venue argument, the Court will not address the venue issue now.

Under the statutes, a "credit services business" is

[A]ny person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such person can or will sell, provide, or perform, any of the following services in return for the payment of money or other valuable consideration:
> (i) Improving a consumer's credit record, history, or rating or establishing a new credit file or record;
> (ii) Obtaining an extension of credit for a consumer; or
> (iii) Providing advice or assistance to a consumer with regard to either subparagraph (i) or (ii) of this paragraph.

§ 14-1901(e)(1) (emphasis added). An "extension of credit" is "the right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes." § 14-1901(f).

Several courts have found that mortgage servicers who offer loan modifications are obtaining an extension of credit for the mortgagor, and are governed by the consumer protection statutes. *See, e.g., Marchese*, 917 F. Supp. 2d at 466; *Barry*, 2012 WL 3595153, at *7; *Allen*, 2011 WL 3425665, at *9. The Defendants argue that they differ from mortgage servicers because they were not offering the loan modification or extending any credit to the Plaintiffs -- the Defendants were merely "assist[ing] [P]laintiffs in obtaining a loan modification from their lender . . . ." ECF No. 10 at 11. In other words, the

Defendants were offering a *service* not an extension of credit.
*See id*.

"Credit services business" is not limited solely to
businesses which offer an extension of credit.  A business which
"provid[es] advice or assistance to a consumer" in obtaining an
extension of credit is also covered by the statutes.   § 14-
1901(e)(1)(iii); *Gomez v. Jackson Hewitt, Inc.*, 46 A.3d 443, 459
(Md. 2012).  In an advisory notice, the Maryland Commissioner of
Financial Regulation recognized that a "new type of business
which purports to offer loss mitigation consulting, foreclosure
prevention, mortgage loan modification, or similar services" was
preying on consumers.  *See* ECF No. 11-9 at 2.  The Commissioner
noted that such businesses were independent from the mortgage
brokers and servicers.  *Id*.  The Commissioner found that, "[a]s
the services provided by these businesses typically include the
possibility of deferral of payment on consumers' mortgage loans,
these businesses often will come under the definition of 'credit
services business.'"  *Id*. at 3.

In a similar case when an attorney, law firm, and other
defendants who were providing "mortgage assistance relief
services" were sued by the Consumer Financial Protection Bureau
for violating the Consumer Financial Protection Act ("CFPA"),[41]
*Consumer Fin. Prot. Bureau v. Chance Gordon*, CV-12-6147 RSWL

---

[41] 12 U.S.C. §§ 5301, *et seq*.

(MRWx) (C.D. Cal. July 18, 2012), a court determined that the defendants were providing a "financial product or service" under a similar federal provision.  *Id.*; *see also* Md. Code. Ann., Com. Law § 13-102(a)(2) (Maryland consumer protection statutes are meant to provide broader protections than federal statutes).

The Defendants have cited no case supporting their argument that the definition of credit services business should be read so narrowly.  The Defendants offered to assist the Plaintiffs in obtaining a loan modification that would alter payments on their existing debt.  ECF Nos. 10 at 11; 11-8 at 2.  Accordingly, the Defendants were conducting a business covered by the statutes.

2. Definition of a Consumer

The Defendants also contend that the Plaintiffs are not "consumers" under the statutes.  ECF No. 10 at 10.  However, the Defendants offer no further argument in support of this general assertion.  *See* ECF No. 10 at 10-11.

A "'[c]onsumer' means any individual who is solicited to purchase or who purchases for personal, family, or household purposes the services of a credit services business."  Md. Code. Ann., Com. Law § 14-1901(c).  The Defendants have admitted that they accepted payment from the Plaintiffs,[42] and the Court has determined that the Defendants operated a credit services business.  Thus, the Plaintiffs are "consumers" protected by the

_____

[42] ECF Nos. 10 at 11; 11-8 at 2.

statutes.  *Cf. Gomez*, 46 A.3d at 459-60 (plaintiffs were not consumers because they never paid the tax preparers directly).

3. Suing Richey in Her Individual Capacity

The Defendants contend that the Plaintiffs cannot pierce the corporate veil to sue Richey in her individual capacity because the Plaintiffs have "not allege[d] any fraud by any of the Defendant[s]," and have not shown that Richey acted in her individual capacity in any of the alleged acts.  ECF No. 18 at 11.  The Plaintiffs argue that Richey Real Estate Law Firm is not a corporation, and Richey personally participated in the fraud alleged in the complaint.  *See* ECF No. 20 at 11-12.

"[T]he most frequently enunciated rule in Maryland is that although the courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud . . . ."  *Bar Arconti & Sons, Inc. v. Ames-Ennis, Inc.* 340 A.2d 225, 234 (Md. 1975); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 728 A.2d 783, 789 (Md. Ct. Spec. App. 1999) ("[A]rguments that have urged a piercing of the veil for reasons other than fraud have failed in Maryland courts.") (internal quotations omitted).

The Defendants have not shown that Richey Real Estate Law Firm is protected by the corporate veil.[43]  However, even if the law firm were a corporation, the Plaintiffs are alleging fraud in this case.[44]  Additionally, the Plaintiffs have alleged that Solis and Alex acted as Richey's agents, and that Richey established a "bogus" business in her name to defraud customers like the Plaintiffs.  *See* ECF No. 1 ¶ 1-2, 4, 19, 22.  The Plaintiffs are suing Richey for her own actions, not attempting to pierce the corporate veil to hold her responsible for the actions of a corporation.[45]

For the above stated reasons, the Court will deny the Defendants' motion for summary judgment.

---

[43] The Plaintiffs alleged that the Richey Real Estate Law Firm was unincorporated, and the Defendants have not argued any facts inconsistent with that assertion.  *See* ECF Nos. 1 ¶ 5; 10 at 3-7; 11-2 at 2.

[44] The Plaintiffs allege that the Defendants violated § 14-1902(5) which punishes the use of a business "which operates as a fraud or deception."  *See* ECF Nos. 1 ¶ 1-2; 11-1 at 11. Additionally, the Plaintiffs are making a claim under the MCPA, which sounds in fraud.  *See Ramos v. Bank of America*, No. DKC 11-3022, 2012 WL 1999867, at *4 (D. Md. June 4, 2012).

[45] *See Winemiller v. Worldwide Asset Purchasing, LLC*, No. 1:09-cv-02487, 2011 WL 1457749, at *3 (D. Md. April 15, 2011) ("Under Maryland law, . . . '[a] principal is *prima facie* liable for the acts of his agent done in the general course of business authorized by him.") (*quoting Carroll v. State,* 3 A. 29, 29 (Md. 1885); *Allen v. Dackman*, 991 A.2s 1216, 1221 (Md. 2010) (defendant can be held individually liable if "he personally committed, inspired, or participated in the tort alleged . . . .").

E. The Plaintiffs' Motion for Partial Summary Judgment

The Plaintiffs argue that they are entitled to summary judgment on liability because the Defendants have not presented any issues of material fact.[46]  *See* ECF No. 11-1 at 3.

1. The Plaintiffs' MCSBA Claims

The Plaintiffs allege several violations under the MCSBA: the Defendants received money from the Plaintiffs without a license from the Commissioner of Financial Regulation of the Department of Labor, Licensing, and Regulation in violation of § 14-1902(1); the Defendants accepted fees before full and complete performance of services in violation of § 14-1902(6); the Defendants were not licensed to operate a credit services business in violation of § 14-1903; the Defendants never provided the Plaintiffs with the information required by § 14-1904-5 or a contract under § 14-1906; and the Defendants did not maintain a surety bond in violation of § 14-1908-9.  *See* ECF Nos. 1 ¶¶ 44-52; 11-1 at 11-12.

---

[46] In support of their argument, the Plaintiffs list six "undisputed facts."  ECF No. 11-1 at 3-5.  The Defendants never refute these factual allegations or present contravening facts. *See* ECF No. 18.

The Defendants never assert that they had a license or a surety bond. *See* ECF Nos. 3-7; ECF No. 18. The Defendants also admit that they accepted fees from the Plaintiffs[47] and that there was no contract.[48] The Defendants' only arguments are that they did not operate a credit services business, and the Plaintiffs have not pled proper damages, arguments which the Court has addressed.[49] *See* ECF Nos. 10 at 8-12; 18 at 6-9. Accordingly, as there are no issues of material fact, the Court will grant summary judgment on liability on each of the preceding violations.

The Plaintiffs allege one additional violation of the MCSBA. The Plaintiffs argue that the Defendants "[e]ngage[d], directly or indirectly, in an[] act, practice, or course of business which operate[d] as a fraud or deception on a[] person in connection with the offer or sale of the services of a credit

---

[47] *See* ECF Nos. 10 at 10-11; 11-8. The Defendants also did not refute the Plaintiffs' assertion that the Plaintiffs paid the fees in advance. *See* ECF No. 10 at 3-7.

[48] The Defendants argued that the lack of a contract was a "threshold requirement" for proving a claim under the MCSBA rather than a violation of the statute and agreed that the existence of a contract could not be inferred from the facts pled. *See* ECF No. 10 at 14. The Defendants cited no case in support of their "threshold requirement argument." *Id.*

[49] The Defendants state in their summary judgment motion that there is "no genuine dispute as to any material fact" in this case; they use the Plaintiffs' facts from the complaint and present no conflicting factual assertions. *See* ECF No. 10 at 14.

services business" in violation of § 14-1902(5).  Although the
Plaintiffs alleged sufficient facts to survive the Defendants'
motion for summary judgment on this claim, fraud has an element
of intent that is for a jury to determine.[50]  From the facts
alleged, a reasonable jury could determine that the Defendants
orchestrated a fraud, or that they simply ran an inept business
that violated the MCSBA, but was not fraudulent.[51]  The Court will
deny the Plaintiffs' motion for summary judgment on this count.

 2. The Plaintiffs' MCPA Claims

 The Plaintiffs argue that "[a] violation of the [M]CSBA is
a *per se* violation of the [M]CPA."  ECF No. 11-1 at 13.  Because
they have established the Defendants' liability under several
MCSBA provisions, the Plaintiffs contend that they are entitled
to summary judgment on their MCPA claim as well.  *Id.*

 Any violation of the MCSBA is "an unfair or deceptive trade
practice" under the MCPA.  *See* Md. Code. Ann., Com. Law § 14-
1914.  However, this does not establish a *per se* violation of
the MCPA.  To prevail on a claim under the MCPA, the Plaintiffs
must prove (1) an unfair or deceptive practice or

---

[50] *See Okwa v. Harper*, 757 A. 2d 118, 127 (Md. 2000) ("[S]ummary
judgment is generally inappropriate when matters such as
knowledge, intent, and motive are at issue.").

[51] In her letter, Richey claims that she was just attempting to
help the friends of one of her paralegals.  *See* ECF No. 11-8 at
2.

misrepresentation that (2) was relied upon, and (3) caused them actual injury. *Stewart,* 859 F. Supp. 2d at 768.

The Defendants argue that the Plaintiffs could not have expected the Defendants to negotiate a non-HAMP loan, and the Defendants made no promise to do so. *See* ECF Nos. 10 at 4, 12-13; 11-8; 18 at 6-7; *see also* ECF No. 17 at 7-9. The Defendants also contend that the Plaintiffs' foreclosure costs, damage to credit, and emotional distress were caused by the Plaintiffs' default on their loan. *See* ECF Nos. 10 at 4-5, 12-13; 18 at 6-7; *see also* ECF No. 17 at 7-9.

Whether the Plaintiffs reasonably relied on the Defendants' representations and whether the Defendants caused their injury are for a jury to determine.[52] Accordingly, the Court will deny the Plaintiffs' motion for summary judgment on their MCPA claim.

---

[52] *See Puryear v. Capital One Bank*, No. RDB-12-3222, 2014 WL 103506, at *5 (D. Md. Jan. 10, 2014) (causation is an issue for the finder of fact and inappropriate for a motion to dismiss); *Okwa*, 757 A. 2d at 127 (determining state of mind is not appropriate on summary judgment).

III. Conclusion

For the reasons stated above, the Plaintiffs' motion for entry of default will be denied, the Defendants' motion to dismiss for lack of subject matter jurisdiction will be denied, the Defendants' motion for summary judgment will be denied, and the Plaintiffs' motion for partial summary judgment will be granted in part and denied in part.


_9/16/14_

Date

                                        William D. Quarles, Jr.
                                        United States District Judge